IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **CHARLES HATTERY,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| vs. | ) Civil Case No.  04-75-GPM-PMF |
| | ) |
| **HEALTH CARE** | ) |
| **PROFESSIONALS, LTD,, et al.,** | ) |
| | ) |
| **Defendants.** | ) |

## REPORT AND RECOMMENDATION

**FRAZIER, Magistrate Judge:**

Before the Court is a motion for summary judgment, filed by defendants Health Professionals LTD. and Feinerman (Doc. No. 39).  Plaintiff filed this civil rights action pursuant to 42 U.S.C. § 1983, alleging a deprivation of his Eighth Amendment right to be free from cruel and unusual punishment during his confinement at Menard Correctional Center between 2001 and 2005. Specifically, plaintiff alleges that these defendants delayed his access to surgical removal of a cataract in his left eye.  The defendants argue that the undisputed facts show that they are entitled to judgment in their favor.  The motion is opposed (Doc. No. 66).

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  To determine whether there is a genuine issue of material fact, courts construe all facts in the light most favorable to the

non-moving party and draw all reasonable and justifiable inferences in favor of that party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

The facts, viewed under the Rule 56 standard, are as follows.[1]  The condition of plaintiff's left eye was evaluated by Dr. Feinerman in April, 2001.  At the time, Dr. Feinerman was the medical director at Menard Correctional Center, where plaintiff was confined as an inmate.  Dr. Feinerman formed the impression that plaintiff had a cataract, which formed a film or cloudiness in the lens of his left eye.  He referred plaintiff to Dr. Hermson, a specialist in the field of ophthalmology, for further evaluation.  Because Dr. Hermson was not available, plaintiff's eye was further evaluated by Dr. Thomas Fleming, also a specialist in the field of ophthalmology.  Following his exam, Dr. Fleming made statements to plaintiff, leading plaintiff to believe that surgical removal of the cataract was a medically necessary form of treatment.  Plaintiff expected to be referred to a cataract surgeon for this form of treatment.  On April 30, 2001, Dr. Fleming prepared a report reflecting his impression that there was a dense cataract in plaintiff's left eye, with normal findings regarding the condition of the retina, vessels, and nerve fibers.  Dr. Fleming recommended further evaluation by Dr. Klingle, a cataract surgeon.

On May 3, 2007, defendant Feinerman re-evaluated plaintiff's condition in light of Dr. Fleming's consultation and directed his staff to schedule surgery to remove the cataract from plaintiff's left eye.  Cataract removal surgery was scheduled as directed.

On June 21, 2001, plaintiff's condition was further evaluated by Dr. Klingle, who recommended cataract surgery as an elective form of treatment.  On June 27, 2001, defendant

---

[1] Hearsay statements submitted by both parties have been excluded from the discussion. Fed. R. Civ. P. 56 (e).

Feinerman conferred with Dr. Klingle and formed the impression that he could exercise his medical judgment to select surgery as a treatment option.  Dr. Feinerman revised his plan to approve surgery and opted to monitor plaintiff's condition, believing that surgical removal of the cataract was not medically imperative because the retina was intact and the visual acuity in plaintiff's right eye had been measured at 20/40.  In making this decision, Dr. Feinerman relied on his medical knowledge of the risks of surgery, as well as information provided and statements made by Dr. Klingle.  Dr. Feinerman relayed this information to plaintiff, explaining that he had scheduled surgery for May 3, 2001, but cancelled it because Health Care Professionals, Ltd. (HPL) would not approve an elective procedure, due to the expense.

Plaintiff's condition was monitored several times between June, 2002, and December, 2004.  Dr. Williams, an optometrist, diagnosed a cataract in plaintiff's left eye, found no medical need for cataract removal surgery, and continued to monitor plaintiff's vision.  On two occasions, Dr. Williams prescribed corrective lenses in an effort to improve plaintiff's visual acuity.

Throughout this period, the vision in plaintiff's left eye was completely obstructed by the cataract.  Due to the loss of vision in the left eye, plaintiff's depth perception, balance, and coordination were poor.  He experienced blurred vision, had difficulty reading and writing, and developed concerns regarding his safety due to the distinct possibility that he would be unable to defend himself from a physical attack.  For a period of time, plaintiff performed work tasks, including typing, sweeping, mopping, and food tray preparation.  He did not participate in sports, due in part to his vision problems.

In 2005, plaintiff was transferred to Stateville Correctional Center.  At that point, he was no longer able to see well enough to perform work tasks and requested protective custody due to

increasing concerns about his safety. He was evaluated by another doctor, who issued a special low bunk permit and recommended cataract removal surgery. This doctor made statements leading plaintiff to believe that surgery should have been provided sooner. A different health care provider approved the surgery, which was performed as an elective procedure in December, 2005. Following the surgery, plaintiff's vision improved dramatically.

### I.  Deliberate Indifference - Defendant Feinerman

Defendant Feinerman seeks judgment in his favor, claiming that the facts could not support a finding that he responded to plaintiff's serious medical needs with deliberate indifference. In order to establish a violation of the Eighth Amendment in a case involving medical care, plaintiff must show two things: that he had a serious medical need and that each defendant responded with deliberate indifference. A difference of opinion regarding the way in which a medical condition is to be treated does not give rise to a constitutional violation. *Estelle v. Gamble*, 429 U.S. 97 (1976); *Garvin v. Armstrong*, 236 F.3d 896 (7th Cir. 2001). In the context of a medical treatment decision, deliberate indifference is not defined as medical negligence. Rather, the decision must reflect a substantial departure from accepted professional judgment practices or standards. In those circumstances, it is reasonable to infer that the defendant made a decision that was not based on the exercise of professional judgment. *Estate of Cole v. Fromm*, 94 F.3d 254, 261-62 (7th Cir. 1996).

The evidence shows that defendant Feinerman made an effort to ascertain the appropriate treatment for plaintiff's ailment. He referred plaintiff for evaluation by two specialists; reviewed information describing plaintiff's condition, considered treatment recommendations; initially decided to schedule surgery; sought clarification; and ultimately formed the impression that cataract removal surgery was not a medically necessary form of treatment. Feinerman opted to forgo or

delay cataract removal surgery and monitor plaintiff's condition. While plaintiff may be able to show that Feinerman did not choose the best treatment plan, no facts show that the decision to monitor his cataract amounts to a substantial departure from the medical norm. Furthermore, no medical evidence verifies that the delay in providing surgery had a detrimental effect on plaintiff's condition. *See Langston v. Peters*, 100 F.3d 1235, 1240-41 (7th Cir.1996). Under these circumstances, defendant Feinerman is entitled to judgment in his favor.

## II.     Deliberate Indifference - Defendant Health Care Professionals Ltd.

Health Care Professionals Ltd (HCP) seeks judgment on the basis that it cannot be liable for the treatment decision of Dr. Feinerman on a theory of respondeat superior. Plaintiff responds that Feinerman's decision was dictated by HCP's policy, custom, or practice of refusing to authorize or pay for any elective procedure.

A private corporation can be held liable under § 1983 for its employee's constitutional violations if an official corporate policy caused the violation. *Woodward v. Correctional Med. Servs. of Ill., Inc.*, 368 F.3d 917, 927 (7th Cir. 2004). According to Dr. Feinerman's affidavit, HPL's policy or practice did not dictate when an inmate was a candidate for surgery. Rather, surgery decisions were made on a case-by-case basis, after input was obtained from a specialist. In an effort to create an issue for trial, plaintiff points to comments Feinerman made about HPL when he explained why he had cancelled surgery. Feinerman's unsworn comment might reflect on the credibility of his testimony, but could not support a finding that HCP's policy caused plaintiff's injury. Absent competent evidence that HCP had a custom or policy to delay surgery for serious medical conditions, HPL is entitled to judgment in its favor.

## III.     Conclusion

IT IS RECOMMENDED that defendants' motion for summary judgment (Doc. No. 39) be GRANTED.  If this recommendation is adopted, no further issues will remain for decision.

SUBMITTED:   September 4, 2007   .

*s/ Philip M. Frazier*
**PHILIP M. FRAZIER**
**UNITED STATES MAGISTRATE JUDGE**